UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MIRNA MARTINEZ SANTIAGO,

     Plaintiff,

v.

ACACIA NETWORK, INC., PROMESA
ADMINISTRATIVE SERVICES
ORGANIZATION, INC. (PASO), DAVID
GLASEL, LYMARIS ALBORS AND RAUL
RUSSI,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

No. 1:22-CV-00228-JGK

**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP

Richard W. Mark
Hayley Fritchie
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
rmark@gibsondunn.com
hfritchie@gibsondunn.com

*Attorneys for Defendants Raul Russi,
Lymaris Albors, and David Glasel*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY ................................ 2

    A.    Plaintiff's Employment, Promotion, and Resignation. .............................. 2

    B.    Plaintiff Files the Instant Lawsuit Two Years After Her Resignation. .......................................................... 3

    C.    Plaintiff's Disparate Treatment, Hostile Work Environment, and Disparate Pay Allegations. .......................................... 4

    D.    Plaintiff's Retaliation Allegations ............................................. 5

LEGAL ARGUMENT ............................................................ 6

    I.    THE APPLICABLE MOTION TO DISMISS STANDARD ............................... 6

    II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A DISPARATE TREATMENT CLAIM UNDER § 1981, NYSHRL, OR NYCHRL. .................... 6

        A.    Albors' Alleged Stray Remark Does Not Support a Discriminatory Inference. .............................................. 8

        B.    Plaintiff's Other Allegations Do Not Give Rise to an Inference of Discrimination. ......................................... 9

            i.    No Inference of Race Discrimination. .......................... 10

            ii.    No Inference of Color Discrimination. ......................... 12

            iii.    No Inference of National Origin Discrimination. ........................ 12

            iv.    No Inference of Age Discrimination ............................. 13

            v.    No Inference of Gender Discrimination. ........................ 14

    III.    PLAINTIFF'S COMPLAINT FAILS TO STATE A HOSTILE WORK ENVIRONMENT CLAIM. ................................................ 15

    IV.    PLAINTIFF'S COMPLAINT FAILS TO STATE A DISPARATE PAY CLAIM. .............................................................. 17

        A.    Plaintiff's EPA Claim is Time-Barred. .................................... 17

**TABLE OF CONTENTS**
*(continued)*

Page

B.    Plaintiff's EPA and NYLL Causes of Action Lack Merit. ....................... 17

V.    PLAINTIFF'S COMPLAINT FAILS TO STATE A RETALIATION
      CLAIM............................................................................................................ 19

      A.    Individual Defendants Cannot Be Personally Liable Under Title
            VII. ....................................................................................................... 19

      B.    Plaintiff Fails to State a Retaliation Claim under § 1981,
            NYSHRL, or NYCHRL............................................................................ 19

VI.   PLAINTIFF'S NYCHRL "PAY DISPARITY" CLAIM IS
      DUPLICATIVE AND SHOULD BE DISMISSED. ............................................ 22

VII.  PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND FOR
      THE THIRD TIME............................................................................................ 23

CONCLUSION................................................................................................................ 23

TABLE OF AUTHORITIES

Page(s)

CASES

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)....................................................................................16

*Ardigo v. J. Christopher Cap., LLC*,
No. 12 Civ. 3627 (JMF), 2013 WL 1195117 (S.D.N.Y. Mar. 25, 2013) ...............................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................6

*Awad v. City of New York.*,
No. 13 Civ. 5753 BMC, 2014 WL 1814114 (E.D.N.Y. May 7, 2014)....................................6

*Baldwin v. Cablevision Sys. Corp.*,
888 N.Y.S.2d 1 (1st Dep't 2009) .........................................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................6

*Benzinger v. Lukoil Pan Americas, LLC*,
447 F. Supp. 3d 99 (S.D.N.Y. 2020).......................................................................18

*Bermudez v. City of New York*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011)....................................................................23

*Bernard v. JP Morgan Chase Bank NA*,
408 F. App'x 465 (2d Cir. 2011) .....................................................................13, 15

*Black v. Buffalo Meat Serv., Inc.*,
No. 15-CV-49S, 2021 WL 2043006 (W.D.N.Y. May 21, 2021)........................................17

*Bliss v. MXK Rest. Corp.*,
220 F. Supp. 3d 419 (S.D.N.Y. 2016)......................................................................7

*Boatright v. U.S. Bancorp*,
No. 18 Civ. 7293 (LJL), 2020 WL 7388661 (S.D.N.Y. Dec. 16, 2020)................................18

*Bullock v. Presbyterian Hosp. In City of New York*,
No. 95 Civ. 3928 (JSM), 1996 WL 328740 (S.D.N.Y. June 13, 1996)..................................17

*Cardwell v. Davis Polk & Wardwell, LLP*,
No. 1:19-CV-10256-GHW, 2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020)...........11, 12, 13, 14

TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Carter v. Verizon*,
   No. 13 Civ. 7579 (KPF), 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015)................................7, 16

*Catanzaro v. City of New York*,
   No. 10 Civ. 1825 (JSR), 2011 WL 335648 (S.D.N.Y. Jan 25, 2011)......................................14

*Colon v. Fashion Inst. of Tech. (State Univ. of New York)*,
   983 F. Supp. 2d 277 (S.D.N.Y. 2013)....................................................................................15

*Conway v. Microsoft Corp.*,
   414 F. Supp. 2d 450 (S.D.N.Y. 2006)....................................................................................10

*Daniels v. City of New York*,
   No. 17 CIV. 9960 (LGS), 2019 WL 251511 (S.D.N.Y. Jan. 17, 2019) ...............11, 12, 13, 14

*E.E.O.C. v. Port Auth. of N.Y. and N.J.*,
   768 F.3d 247 (2d Cir. 2014)...................................................................................................18

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
   873 F. Supp. 2d 569 (S.D.N.Y. 2012)....................................................................................15

*Feliciano v. City of New York*,
   No. 14 Civ. 6751, 2015 WL 4393163 (S.D.N.Y. July 15, 2015) ...........................................16

*Fletcher v. Dakota, Inc.*,
   99 A.D.3d 43 (N.Y. App. Div. 2012) ....................................................................................20

*Giuntoli v. Garvin Guybutler Corp.*,
   726 F. Supp. 494 (S.D.N.Y. 1989).........................................................................................18

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir. 2000).....................................................................................................10

*Henry v. NYC Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014)......................................................................................21

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010)...................................................................................................21

*In re Initial Pub. Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003)....................................................................................23

*Jackson v. Cnty. of Rockland*,
   450 F. App'x 15 (2d Cir. 2011) ...............................................................................................6

iv

TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Karupaiyan v. CVS Health Corp.*,
No. 19 Civ. 8814 (KPF), 2021 WL 4341132 (S.D.N.Y. Sept. 23, 2021) ................................22

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
120 A.D.3d 18 (1st Dep't 2014) .............................................................................16

*Ledbetter v. Goodyear Tire & Rubber Co.*,
550 U.S. 618 (2007) .............................................................................................17

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) ..............................................................................9, 20

*Llanos v. City of New York*,
129 A.D.3d 620 (1st Dep't 2015) ...............................................................................7

*Lott v. Coreone Techs., LLC*,
No. 14-CV-5848 (CM), 2016 WL 462486 (S.D.N.Y. Feb. 2, 2016) .....................................21

*Mandell v. Cnty. of Suffolk*,
316 F.3d 368 (2d Cir. 2003) ...................................................................................19

*Massaro v. Dep't of Educ. of City of N.Y.*,
121 A.D.3d 569 (1st Dep't 2014) .............................................................................14

*McGullam v. Cedar Graphics, Inc.*,
No. 04-CV-2891 (DRH) (AKT), 2007 WL 4326819 (E.D.N.Y. Dec. 7, 2007) .....................17

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) .........................................................................7, 16, 20

*Moazzaz v. MetLife, Inc.*,
No. 19-CV-10531 (JPO), 2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) ................................18

*Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*,
No. 21 Civ. 02512 (CM), 2022 WL 524551 (S.D.N.Y. Feb. 22, 2022) ..................................7

*Moore v. Verizon*,
No. 13 Civ. 6467 (RJS), 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016) ................................8, 9

*Osborne v Moody's Inv'rs. Serv., Inc.*,
No. 1:17-CV-01859 (ALC), 2018 WL 1441392 (S.D.N.Y. March 22, 2018) ......11, 12, 13, 14

*Pearson v. Merrill Lynch*,
No. 10 Civ. 5119 (RJS), 2012 WL 983546 (S.D.N.Y. Mar. 22, 2012) ...........................13, 15

TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Pollis v. New School for Social Research,*
    132 F.3d 115 (2d Cir. 1997)...........................................................................................17

*Roenick v. Flood,*
    No. 20 CIV. 7213 (JPC), 2021 WL 2355108 (S.D.N.Y. June 9, 2021)....................................8

*Ruiz v. Cnty. of Rockland,*
    609 F.3d 486 (2d Cir. 2010)............................................................................................10

*Solomon v. Fordham University,*
    No. 18 Civ. 4615, 2020 WL 7711697 (S.D.N.Y. Dec. 29, 2020).............................................9

*Stinnett v. Delta Air Lines, Inc.,*
    No. 18 Civ. 2704 (DLI), 2019 WL 1493224 (E.D.N.Y. Mar. 31, 2019)................................15

*Terry v. Ashcroft,*
    336 F.3d 128 (2d Cir. 2003).............................................................................................7

*Tomka v. Seiler Corp.,*
    66 F.3d 1295 (2d Cir. 1995)...........................................................................................19

*Weinreb v. Xerox Bus. Servs., LLC Health & Wellness Plan,*
    323 F. Supp. 3d 501 (S.D.N.Y. 2018)..............................................................................19

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,*
    127 F. Supp. 3d 156 (S.D.N.Y. 2015)................................................................................2

*Whitfield-Ortiz v. Dep't of Educ. of the City of N.Y.,*
    116 A.D.3d 580 (1st Dep't 2014) .................................................................................7, 9

*Williams v. Metro-N. Commuter R. Co.,*
    No 11 Civ. 7835 (CM), 2012 WL 2357049 (S.D.N.Y. June 20, 2012)...................................15

*Woodard v. TWC Media Sols.,*
    No. 09 Civ. 3000 (BSJ)(AJP), 2011 WL 70386 (S.D.N.Y. Jan. 4, 2011) ............................8, 9

*Wooding v. Winthrop Univ. Hosp.,*
    No. 16 Civ. 4477 (ADS) (ARL), 2017 WL 2559942 (E.D.N.Y. June 12, 2017) ........12, 13, 14

*Wrighten v. Glowski,*
    232 F.3d 119 (2d Cir. 2000)...........................................................................................19

*Wu v. Good Samaritan Hosp. Med. Ctr.,*
    815 F. App'x 575 (2d Cir. 2020) ....................................................................................19

TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Yan v. Ziba Mode Inc.*,
    No. 15 Civ. 47 (RJS), 2016 WL 1276456 (S.D.N.Y. Mar. 29, 2016) ........................12, 13, 14

*Zann Kwan v. Andalex Grp. LLC*,
    737 F.3d 834 (2d Cir. 2013)....................................................................................................20

**STATUTES**

29 U.S.C. § 255(a) ....................................................................................................................17

## PRELIMINARY STATEMENT

Defendants David Glasel, Lymaris Albors, and Raul Russi (the "Individual Defendants"), submit this memorandum of law in support of their motion to dismiss Plaintiff's Second Amended Complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Following her resignation two years ago, Plaintiff brought this action against her former employer, Acacia Network Inc. ("Acacia"), and the Individual Defendants who are current or former Acacia executives. In response to the Individual Defendants' letter requesting a pre-motion conference, Plaintiff filed a Second Amended Complaint that included new causes of actions and approximately 76 new paragraphs of factual allegations. Those additions, however, did not cure many of the deficiencies identified in the Individual Defendants' letter. By way of example only, the Individual Defendants still cannot be held personally liable under Title VII; Plaintiff's claim for "Discrimination Based Upon Pay Disparity" continues to be duplicative of another discrimination cause of action; and her gender discrimination claim is implausible. Instead, Plaintiff's additional factual allegations further undermine the plausibility of her claims such that her causes of action for disparate treatment, hostile work environment, disparate pay, and retaliation should be dismissed for the reasons that follow.

*First*, Plaintiff fails to create a plausible inference of discrimination based on her race, color, national origin, age, and/or gender. She does not allege any direct evidence of discrimination in the context of her employment, and fails to offer factual allegations to allow comparison of her treatment to the other Acacia employees that she identifies. In fact, Plaintiff's allegations that other Acacia employees within her protected categories (namely women and non-Puerto Rican employees) were treated favorably undermine her discrimination claims.

*Second*, because Plaintiff fails to plausibly allege that she was treated less well at Acacia because of discrimination based on her race, color, national origin, age, or gender, her hostile

1

work environment claim on those bases should be dismissed.  In any case, she alleges no conduct that rises to the level of unlawful harassment.

*Third*, Plaintiff's disparate pay claims should be dismissed on the pleadings because she fails to identify a comparator that was similarly situated to her in all material respects but was paid more.  Moreover, her Equal Pay Act claim is time barred.

*Finally*, Plaintiff's retaliation claims should be dismissed because her alleged protected activity is not causally linked to any adverse actions that are reasonably likely to deter a person from engaging in protected activity.

For all of these reasons, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

### STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY

**A.    Plaintiff's Employment, Promotion, and Resignation.**

Acacia is a social-services agency offering extensive community-based services, including medical care, nutrition, housing, education, employment resources, and senior services.[1]  Plaintiff Mirna Martinez Santiago, a then 48-year old Black woman of Honduran descent, was hired by Acacia in October 2016 as Deputy Counsel for Litigation in the Office of

---

[1] *What We Do*, ACACIA NETWORK, https://acacianetwork.org/services/ (last visited June 3, 2022).  At the motion-to-dismiss stage, "a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute."  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015).

Legal Affairs.  (¶¶ 14, 15.)[2]  Plaintiff's duties and responsibilities included supervising active litigations, outside counsel, and other attorneys and staff at Acacia.  (¶ 36.)  In that role, Plaintiff had occasion to interact with the Individual Defendants—Glasel as Chief Legal Officer, Albors as Chief Operating Officer, and Russi as Chief Executive Officer.  (¶¶ 10-13.)

Over the course of the three years she worked at Acacia, Plaintiff received salary and cost of living increases.  (¶¶ 45-47.)  In June 2019, she was promoted to Senior Deputy Counsel for Litigation.  (¶ 47.)  On September 20, 2019, Plaintiff resigned her employment.  (¶ 82.)  She does not allege that anyone replaced her as Senior Deputy Counsel following her resignation.

**B.  Plaintiff Files the Instant Lawsuit Two Years After Her Resignation.**

On January 11, 2022, Plaintiff commenced this action against Acacia and the Individual Defendants, alleging various causes of action for employment discrimination, hostile work environment, and retaliation.  (Dkt. 1.)  Plaintiff then filed an Amended Complaint on January 21 (Dkt. 8.  Four months later, and in response to the Individual Defendants' letter request for a pre-motion conference (Dkt. 28), Plaintiff filed a Second Amended Complaint ("Complaint") with leave of Court (Dkt. 31).

The Complaint asserts 11 causes of action ("COA") against the Individual Defendants under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and § 1981 of the Civil Rights Act of 1871 ("§ 1981") for disparate treatment; under the Equal Pay Act ("EPA") and § 194 of the New York Labor Law ("NYLL") for disparate pay; and under the NYCHRL for hostile work environment.  Plaintiff also asserts

---

[2] All "¶" references are to the Second Amended Complaint, attached as **Exhibit A** to the Declaration of Richard W. Mark.  The allegations are accepted as true solely for the purpose of this motion.

retaliation claims against the Individual Defendants under Title VII of the Civil Rights Act of 1964 ("Title VII"), NYSHRL, NYCHRL, and §1981.

    **C.**    **Plaintiff's Disparate Treatment, Hostile Work Environment, and Disparate Pay Allegations.**

Although Plaintiff's Complaint stretches over 274 paragraphs, her disparate treatment, hostile work environment, and disparate pay claims are premised on a small set of actors and alleged events.  Plaintiff alleges that Albors "publicly stated on numerous instances that it was her purpose to promote Puerto Rican employees, and that the future of the organization was 'young Puerto Rican women.'"  (¶¶ 25, 87.)  Plaintiff alleges that another Acacia employee, Maria del Carmen Arroyo, separately reiterated Albors' "vision for the future of Acacia to be 'young, Puerto Rican women."  (¶ 83.)  Additionally, Plaintiff alleges that six Acacia employees of varying race, national origin, age, and gender were treated more favorably than she:

- **Defendant Lymaris Albors**, a light-skinned Puerto Rican woman under 40 who is "not Black," received two promotions—first from Event Planner to Chief of Staff, then to Chief Operating Officer—while Plaintiff was promoted only once to Senior Deputy Counsel for Litigation.[3]  (¶¶ 84-87.)

- **Maria del Carmen Arroyo**, a Puerto Rican female VP/SVP of Administration, was permitted to supervise her brother, while Plaintiff's stepdaughter was not hired for a paralegal position because of a nepotism policy.  (¶¶ 61, 80-81, 83.)

- **Russell Palmer**, a light-skinned White male, was hired as Corporate Risk Manager at a higher starting salary than Plaintiff despite his comparative lack of education and shorter tenure at Acacia, in addition to receiving free, more convenient parking.  (¶¶ 53, 56, 59, 227.)

- **Yaberci Perez-Cubillan**, a light-skinned Hispanic woman, was allowed to engage in public speaking events without restriction, while Plaintiff was not allowed to participate in a panel at St. John's University School of Law.  (¶¶ 77-78.)

---

[3] In fact, Albors was Director of Project Management at Acacia in 2016.

- **Gia Rosado**, a light-skinned Puerto Rican "woman of color" under 40 who is "not Black," was promoted to supervise Plaintiff and received higher compensation than Plaintiff despite having less experience.  (¶¶ 38, 40, 43, 45, 46, 236.)

- **Defendant Raul Russi**, the Puerto Rican male CEO, was permitted to supervise his brother, while Plaintiff's stepdaughter was not hired for a paralegal position because of a nepotism policy.  (¶¶ 80-81.)

    **D.    Plaintiff's Retaliation Allegations.**

Plaintiff alleges that beginning in or about July 2017, Plaintiff "told" Glasel, Katrina Jones (Director of Human Resources), Candida Hierro (Human Resources Manager), Arroyo, Jose Rodriguez (Special Counsel), Hector Diaz (President), and Roberto Velez (attorney for Acacia's Board of Directors) "about the discrimination . . . including but not limited to, the disparate treatment and disparate pay in comparison to Palmer and Rosado, subordination to Rosado, and limited opportunity for advancement based on Plaintiff's race, color, national origin, and her age."  (¶¶ 61, 64, 179.)  Plaintiff generally alleges that "'new restrictions' against speaking engagements" and a nepotism policy were then enforced against her.  (¶¶ 77-81.)

More specifically, Plaintiff alleges that during the week of March 19, 2018, she "complained to Glasel about her salary being significantly less than Rosado and Palmer's salaries, as well as her subordination to Rosado as Plaintiff's Supervisor after Plaintiff was passed over for that promotion."  (¶ 64.)  Glasel allegedly "ignored Plaintiff for weeks" thereafter until their next "one-on-one interaction" in April, when Glasel asked Plaintiff to file papers in a matter for which she had not appeared.  (¶ 65.)  When Plaintiff refused, Glasel allegedly "became enraged, stood up over Plaintiff in a menacing and intimidating manner, pounded his fists on the table in front of her, and yelled down at her and ordered that she comply with his demand."  (¶ 65.)  Plaintiff identifies two other allegedly retaliatory actions: (i) Jones "reprimanded [her] for re-hiring outside counsel without prior approval" (¶ 76); and (ii) she was

subjected to a "hastily crafted" policy against outside speaking engagements (¶ 77).  Both actions

allegedly occurred in May 2019, more than a year after Plaintiffs' alleged complaint(s).

## LEGAL ARGUMENT

**I.    THE APPLICABLE MOTION TO DISMISS STANDARD.**

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009).  The standard demands "more than a sheer possibility that a

defendant has acted unlawfully." *Id*.  The plaintiff's claim must be more than merely

"speculative," *Twombly*, 550 U.S. at 545, and "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  A

reviewing court should "draw on its judicial experience and common sense" to determine

plausibility.  *Id*. at 679.

"[B]ald assertions of discrimination . . . unsupported by any comments, actions, or

examples of similarly-situated individuals outside of [the plaintiff's] protected class being treated

differently, from which [the Court] could infer that the defendants possessed a discriminatory or

retaliatory motive, are implausible and insufficient to survive a motion to dismiss." *Jackson v.

Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011).

**II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A DISPARATE TREATMENT
        CLAIM UNDER § 1981, NYSHRL, OR NYCHRL.**

The pleading standards for discrimination are generally the same under Title VII, § 1981,

and the NYSHRL.  *See Awad v. City of New York*., No. 13 Civ 5753 BMC, 2014 WL 1814114,

at *5 (E.D.N.Y. May 7, 2014).  Plaintiff must plausibly allege:  "1) [s]he belonged to a protected

class; 2) [s]he was qualified for the position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Although NYCHRL claims are analyzed "separately and independently" from federal and state claims, "the NYCHRL is not a 'general civility code,'" and a "plaintiff still bears the burden of showing that the [challenged] conduct is caused by a discriminatory motive." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-110 (2d Cir. 2013).[4]

Thus, where a plaintiff does not plausibly allege that she suffered adverse action <u>because of</u> her membership in a protected category, dismissal of her discrimination claims is appropriate. *See, e.g., Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424 (S.D.N.Y. 2016) (dismissing NYSHRL and NYCHRL claims because plaintiff failed to allege a causal connection between the conduct she experienced and her gender); *Carter v. Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015) (dismissing NYSHRL and NYCHRL claims with prejudice where plaintiff made "only conclusory allegations and d[id] not provide any indication of how any alleged adverse or dis[-]preferential employment action was connected to [] gender or age"); *see also Llanos v. City of New York*, 129 A.D.3d 620, 620 (1st Dep't 2015) ("[P]laintiff's failure to adequately plead discriminatory animus is fatal to [his] claim of [discrimination under the NYCHRL]."); *Whitfield-Ortiz v. Dep't of Educ. of the City of N.Y.*, 116

---

[4] The NYSHRL amendment that took effect on October 11, 2019, does not apply to Plaintiff's COAs, all of which accrued on or before her last day of employment on September 20, 2019. *See, e.g., Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022).

A.D.3d 580, 581 (1st Dep't 2014) (holding that plaintiff's "fail[ure] to adequately plead discriminatory animus" was "fatal" to her NYSHRL and NYCHRL claims).

A.    **Albors' Alleged Stray Remark Does Not Support a Discriminatory Inference.**

In support of her age and national original discrimination claims, Plaintiff points to Albors' alleged statement(s) that "it was her purpose to promote Puerto Rican employees, and that the future of the organization was 'young Puerto Rican women.'"  (¶¶ 25, 87.)

Verbal comments indicate discriminatory motivation only where "a nexus exists between the allegedly discriminatory statements and [the defendant's treatment of the plaintiff]." *Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (dismissing NYSHRL and NYCHRL claims and holding that two alleged comments—"why don't you retire" and "are you old enough to retire"—were non-actionable stray remarks).  Otherwise, the comment is stray remark, which "even if made by a decision maker, do[es] not constitute sufficient evidence to support a case of employment discrimination." *Id.*; *Roenick v. Flood*, No. 20 CIV. 7213 (JPC), 2021 WL 2355108, at *6 (S.D.N.Y. June 9, 2021) (disregarding stray remark—"that Weir 'is gay and can say whatever'"—and dismissing NYSHRL and NYCHRL claims).  "In determining whether a comment should be considered a stray remark, courts consider who made the remark, when the remark was made in relation to the termination, the content of the remark, and the context in which the remark was made." *Moore*, 2016 WL 825001, at *8.  "Remarks are especially likely to be 'stray' when made by a decision maker unrelated to the decision-making process temporally remote from the date of decision." *Woodard v. TWC Media Sols.*, No. 09 Civ. 3000 (BSJ)(AJP), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011), *aff'd sub nom. Lawless v. TWC Media Sols.*, 487 F. App'x 613 (2d Cir. 2012).

Albors' alleged comment concerning young Puerto Rican woman, even if true, is a stray remark that does not raise an inference of discrimination against Plaintiff.  Primarily, Plaintiff

does not allege that Albors' alleged comment arose "in a context at all related to" Plaintiff. *Moore*, 2016 WL 825001, at *9. Moreover, Plaintiff fails to allege <u>when</u> this alleged comment was made: there is no indication it was made in relation to, let alone close in time to, any of the allegedly discriminatory conduct towards her (*e.g.* her compensation or advancement opportunities). *See, e.g., id.* at *9 (noting that the non-actionable stray remarks occurred "at least months before [the plaintiff's] first suspension and nearly a year prior to [the plaintiff's] termination"); *Woodard*, 2011 WL 70386, at *7 (noting that the stray comments were made "approximately eight months before [p]laintiff's termination."). Accordingly, Albors' alleged comment is a non-actionable stray remark and does not support a discriminatory inference as to Plaintiff.

      **B.**    **Plaintiff's Other Allegations Do Not Give Rise to an Inference of Discrimination.**

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in . . . degrading terms [related to a protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (internal quotation marks omitted); *see also Whitfield-Ortiz*, 116 A.D.3d at 581 (dismissing NYCHRL claims in absence of "allegations of any comments or references to plaintiff's age or race made by any employee of defendants" or "factual allegations demonstrating that similarly situated individuals who did not share plaintiff's protected characteristics were treated more favorably than plaintiff").

Where, as here, a plaintiff relies on alleged comparators to infer discrimination, she must plead that "she was similarly situated in all material respects to the individuals with whom she

seeks to compare herself." *Littlejohn*, 795 F.3d at 312; *see also Solomon v. Fordham University*, No. 18 Civ. 4615, 2020 WL 7711697, at *9 (S.D.N.Y. Dec. 29, 2020) (dismissing claim on the pleadings where plaintiff did not provide sufficient details regarding her comparators' specific work duties).  This standard requires "close resemblance and circumstances of plaintiff's and comparator's cases," and thus Courts consider non-exclusive factors such as: (1) whether the plaintiff and comparators were subject to the same performance and evaluation standards; (2) whether the plaintiff and comparator engaged in conduct of "comparable seriousness" and faced different consequences; and (3) whether the plaintiff and comparator shared a supervisor. *Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000) (explaining that plaintiff and comparators are often not similarly situated where they have different supervisors); *see also Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465 (S.D.N.Y. 2006) (collecting cases); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) ("An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'").

As explained below, the Complaint lacks plausible allegations to support an inference of race, color, national origin, age, or gender discrimination.

<u>i.  No Inference of Race Discrimination.</u>

Plaintiff's race discrimination claims fail because she does not allege any facts to infer race-based animus.  Plaintiff has not alleged any degrading remarks aimed at her alleged race (Black); rather, her claim is premised on the comparative treatment of Palmer, who is White, and Albors and Rosado, who are "not Black."  (¶¶ 21, 236.)

Plaintiff does not allege that Palmer, or Albors, or Rosado is otherwise similarly situated to her, let alone in all material respects.  By way of example only, Plaintiff proffers no allegations related to their supervisor(s), duties and responsibilities, performance and evaluation

standards, and/or conduct on the job.  Although Plaintiff and Rosado both functioned as attorneys, Rosado was promoted to "Supervisor in the Office of Legal Affairs," while Plaintiff was promoted to Senior Deputy Counsel.  (¶¶ 23, 47.)  The Complaint lacks allegations that would allow comparison of the duties and responsibilities of the positions, and the qualifications for each.  Indeed, it is axiomatic that attorneys at an expansive agency like Acacia would handle far more legal issues than "litigation," such that Plaintiff's work as a litigator (or Senior Deputy Litigation Counsel) cannot, on its face, reasonably compare to a more general supervisory role without additional factual detail.  As for Palmer and Albors, the allegations pleaded permit only the inference that they are <u>not</u> similarly situated to Plaintiff.  Plaintiff served as in-house litigation counsel throughout her employment, while Palmer was a Corporate Risk Manager, and Albors transitioned from Event Planner, to Chief of Staff, to COO.  (¶¶ 22, 53, 84, 85.)

Accordingly, Plaintiff has not adequately pleaded that race was a motivating factor in any unequal treatment she allegedly suffered because she has not plausibly alleged that she was similarly situated to her alleged comparators.  *See Cardwell v. Davis Polk & Wardwell, LLP*, No. 1:19-CV-10256-GHW, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020) (holding that "vague allegations that [plaintiff] was treated less well than white associates are inadequate to plausibly plead either the existence of racial animus or a causal connection between his experiences and any such animus").  Plaintiff's race discrimination claims should thus be dismissed*.  See, e.g., Daniels v. City of New York*, No. 17 CIV. 9960 (LGS), 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019) (dismissing discrimination claims that "lack[ed] any specificity as to the alleged comparators' qualifications, responsibilities, employment history and conduct that gave rise to their reprimands."); *Osborne v Moody's Inv'rs. Serv., Inc.*, No. 1:17-CV-01859 (ALC), 2018 WL 1441392, at *5 (S.D.N.Y. March 22, 2018) (dismissing NYSHRL and NYCHRL claims where

"plaintiff's complaint lack[ed] specificity regarding any comparators"); *Wooding v. Winthrop Univ. Hosp.*, No. 16 Civ. 4477 (ADS) (ARL), 2017 WL 2559942, at *10 (E.D.N.Y. June 12, 2017) (dismissing complaint that failed to state comparators' positions, responsibilities, qualifications or quality of their work); *Yan v. Ziba Mode Inc.*, No. 15 Civ. 47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (dismissing disparate treatment claim where plaintiff "fail[ed] to plead any facts regarding how [the comparators'] identities, experience levels, and conduct compared to [p]laintiff's").

> ii.   No Inference of Color Discrimination.

Plaintiff's color discrimination claims are similarly deficient.  Plaintiff does not allege any degrading remarks or comments targeting her color (Dark).  Rather, her claim is premised only on the comparative treatment of four "light-skinned" employees—Albors, Rosado, Palmer, and Perez-Cubillan (¶¶ 17, 21, 78)—none of whom are alleged to be otherwise similarly situated to her in all material respects.  Like Albors, Rosado, and Palmer, *see* Section II.B.i, the allegations as to Perez-Cubillan are bare, without any factual detail as to whether they shared similar supervisor(s), performance metrics, and/or job responsibilities.  Indeed, Plaintiff fails to provide any factual detail whatsoever regarding Perez-Cubillan's role at Acacia.  Thus, here too, Plaintiff fails to allege facts sufficient to infer color discrimination, and those claims should be dismissed.  *See, e.g., Cardwell*, 2020 WL 6274826, at *22; *Daniels*, 2019 WL 251511, at *4; *Osborne*, 2018 WL 1441392, at *5; *Wooding*, 2017 WL 2559942, at *10; *Yan*, 2016 WL 1276456, at *5.

> iii.   No Inference of National Origin Discrimination.

For the reasons stated in Section II.A, Albors' alleged stray remark regarding Puerto Rican women does not support a discriminatory inference.  That comment aside, Plaintiff points to four alleged comparators—Albors, Rosado, Russi, and Arroyo—in support of her claim for

national original discrimination.  (¶¶ 21, 79-81.)  Like the others, *see* Sections II.B.i-ii, Plaintiff

fails to allege that Russi, the CEO of Acacia (¶ 22), or Arroyo, VP/SVP of Administration

(¶¶ 61, 83) were otherwise similarly situated to her in all material respects such that the

circumstances of their employment may be reasonably compared.  *See, e.g., Cardwell*, 2020 WL

6274826, at *22; *Daniels*, 2019 WL 251511, at *4; *Osborne*, 2018 WL 1441392, at *5;

*Wooding*, 2017 WL 2559942, at *10; *Yan*, 2016 WL 1276456, at *5.

Plaintiff's other allegations undermine her claim of discrimination based on her national

origin (non-Puerto Rican Hispanic).  Plaintiff alleges that Perez-Cubillan, a "Hispanic

woman"—who is not alleged to be Puerto Rican—received favorable treatment at Acacia,

undercutting Plaintiff's theory that Puerto Ricans were systematically favored.  (¶ 78.)  Because

Plaintiff alleges that a non-Puerto Rican was treated favorably, she fails to provide a reasonable

basis to infer discrimination based her national origin.  *See Bernard v. JP Morgan Chase Bank

NA*, 408 F. App'x 465, 468 (2d Cir. 2011) (holding there is no plausible discriminatory animus

where an employee within a protected class is treated the same as other employees); *cf. Pearson

v. Merrill Lynch*, No. 10 Civ. 5119 (RJS), 2012 WL 983546, at *8 (S.D.N.Y. Mar. 22, 2012)

("An inference of discriminatory intent does not exist when the plaintiff and his or her

replacement are of the same protected category.") (collecting cases).  For all of these reasons,

Plaintiff's claims for discrimination based on national origin should be dismissed.

### iv.   No Inference of Age Discrimination.

Albors' alleged stray remark aside, *see* Section II.A, Plaintiff points to only Albors and

Rosado as alleged comparators in support of her claim for age discrimination.  Plaintiff alleges

when she was 48 years old, Albors and Rosado, who were "under 40" and 35 years old,

respectively, received favorable treatment.  (¶ 21.)  For the reasons in Section II.B.i, Plaintiff

fails to allege that either Albors or Rosado were comparators sufficient to raise an inference of

age discrimination. *See, e.g., Cardwell*, 2020 WL 6274826, at *22; *Daniels*, 2019 WL 251511, at *4; *Osborne*, 2018 WL 1441392, at *5; *Wooding*, 2017 WL 2559942, at *10; *Yan*, 2016 WL 1276456, at *5.

Moreover, Plaintiff's allegations as to Albors are insufficient to raise an inference of age discrimination because Plaintiff fails to allege the specific age difference between the two women; she alleges only that it was at least eight years. *See, e.g., Massaro v. Dep't of Educ. of City of N.Y.*, 121 A.D.3d 569, 570 (1st Dep't 2014) (affirming motion to dismiss NYSHRL and NYCHRL claims because plaintiff's "allegations that she was 51 years old and was treated less well than younger teachers [we]re insufficient to support her claims"). Courts in this circuit have held that "[w]ithout more, age differences of less than ten years have been found insufficient to support an inference of discrimination." *Catanzaro v. City of New York*, No. 10 Civ. 1825 (JSR), 2011 WL 335648, at *5 (S.D.N.Y. Jan 25, 2011), *aff'd*, 486 F. App'x 899 (2d Cir. 2012) (collecting cases). So even affording Plaintiff every favorable inference, she fails to allege that Albors was substantially younger than her, further negating the plausibility of her age discrimination claim. Accordingly, Plaintiff's age discrimination claims should be dismissed.

v.   <u>No Inference of Gender Discrimination.</u>

Finally, Plaintiff fails to raise any inference of discrimination based on her gender (female). She alleges no derogatory comments related to her gender (in fact, she alleges the opposite (¶ 25)), and the two men she points to as comparators—Palmer and Russi—are not alleged to be otherwise similarly situated to her in all material respects, *see* Sections II.B.ii-iii. *See, e.g., Cardwell*, 2020 WL 6274826, at *22; *Daniels*, 2019 WL 251511, at *4; *Osborne*, 2018 WL 1441392, at *5; *Wooding*, 2017 WL 2559942, at *10; *Yan*, 2016 WL 1276456, at *5.

Here again, Plaintiff's own allegations undermine her gender discrimination claim. She alleges that Albors, Rosado, Perez-Cubillan, and Arroyo, all female Acacia employees, received

favorable treatment during their employment.  (¶¶ 21-23, 78.)  Accordingly, there is no basis to

infer that Plaintiff was discriminated against based on her gender, and those claims should be

dismissed.  *See Bernard*, 408 F. App'x at 468; *cf. Pearson*, 2012 WL 983546, at *8.

      In sum, Plaintiff fails to plausibly allege that she has been treated less well than other

employees <u>because of</u> her race, color, national origin, age, and/or gender, and thus the Court

should dismiss her disparate treatment COAs under § 1981, the NYSHRL, and the NYCHRL.[5]

## III.   PLAINTIFF'S COMPLAINT FAILS TO STATE A HOSTILE WORK ENVIRONMENT CLAIM.

      To state an NYCHRL hostile work environment claim, a plaintiff must plausibly allege

"unequal treatment based upon membership in a protected class."  *Fattoruso v. Hilton Grand*

*Vacations Co., LLC*, 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir.

2013).  In other words, she must show that she was treated "'less well' <u>because of</u>" her

membership in a protected class.  *Colon v. Fashion Inst. of Tech. (State Univ. of New York)*, 983

F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (emphasis added); *see also Williams v. Metro-N.*

*Commuter R. Co*., No 11 Civ. 7835 (CM), 2012 WL 2357049, at *13 (S.D.N.Y. June 20, 2012)

("[T]he broader remediation available under the City law does not allow the Plaintiff to dispense

with linking [her] claim of hostility to some attitude that the law forbids.").  Actions that are

mere "petty slights or trivial inconveniences" are insufficient to establish a hostile work

environment.  *See Mihalik*, 715 F.3d at 113.

---

[5] To the extent Plaintiff attempts to assert an aiding and abetting claim against the Individual

Defendants (¶ 214), those claims should be dismissed because she fails to allege plausible

discrimination.  *See Stinnett v. Delta Air Lines, Inc*., No. 18 Civ. 2704 (DLI), 2019 WL

1493224, at *9 (E.D.N.Y. Mar. 31, 2019), *aff'd*, 803 F. App'x 505 (2d Cir. 2020).

As set forth in Section II, Plaintiff does not plausibly allege that any purportedly hostile actions took place "because of" her race, color, national origin, age, or gender, and her hostile work environment claim should be dismissed. *See Feliciano v. City of New York*, No. 14 Civ. 6751, 2015 WL 4393163, at *14 (S.D.N.Y. July 15, 2015) (dismissing NYCHRL hostile work environment claim because plaintiff did "not allege that the limited acts on which [the] hostile work environment claim [were] based were discriminatory"); *Carter*, 2015 WL 247344, at *10 (dismissing hostile work environment claims because "an isolated comment cannot plausibly state a claim for hostile work environment" and "[p]laintiff's failure to allege a link to his gender require[d] that they be dismissed").

Indeed, it is insufficient for a plaintiff merely to identify her protected characteristics and then allege only that any "bad days" in the workplace were <u>because of</u> those characteristics. *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.").  And New York courts have dismissed hostile work environment claims involving far more egregious conduct than anything Plaintiff alleges here.  *See, e.g.*, *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 26 (1st Dep't 2014) (dismissing NYCHRL hostile work environment claim where plaintiff alleged that a law firm partner made inappropriate comments, including that "women who breast fed were cows," and holding that "a reasonable person would consider the complained-of conduct nothing more than petty slights and trivial inconveniences").

Accordingly, Plaintiff hostile work environment COA should be dismissed.

## IV. PLAINTIFF'S COMPLAINT FAILS TO STATE A DISPARATE PAY CLAIM.

### A. Plaintiff's EPA Claim is Time-Barred.

The EPA, 29 U.S.C. §§ 206, *et seq.*, generally has a two-year statute of limitations, unless

the plaintiff establishes a willful violation, then there is a three-year limitations period.

29 U.S.C. § 255(a); *Pollis v. New School for Social Research*, 132 F.3d 115, 118 (2d Cir. 1997).

Unlike other federal claims, there is no requirement of commencing an administrative

proceeding before suing under the EPA. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550

U.S. 618, 640 (2007).  Thus "there is no reason why Plaintiff could not have filed her Equal Pay

Act claim prior to the conclusion of the [agency] investigations into her Title VII claims."

*McGullam v. Cedar Graphics, Inc.*, No. 04-CV-2891 (DRH) (AKT), 2007 WL 4326819, at *1

(E.D.N.Y. Dec. 7, 2007).  There is also no equitable tolling by the EEOC charge.  *Id.*

Plaintiff fails to allege a willful violation of the EPA and thus she had only two years to

assert her COA.  When Plaintiff commenced this action on January 11, 2022, her EPA COA

based on her employment that ended September 20, 2019, was untimely and should be

dismissed.  *See Black v. Buffalo Meat Serv., Inc.*, No. 15-CV-49S, 2021 WL 2043006, at *24

(W.D.N.Y. May 21, 2021) (dismissing EPA claim as time-barred where plaintiff failed to allege

a willful violation).

### B. Plaintiff's EPA and NYLL Causes of Action Lack Merit.

As a preliminary matter, Courts in the Second Circuit disagree whether there is individual

liability under the EPA and NYLL.  *Compare Bullock v. Presbyterian Hosp. In City of New

York*, No. 95 Civ. 3928 (JSM), 1996 WL 328740, at *3 (S.D.N.Y. June 13, 1996) (holding no

individual liability under the NYLL), *and Giuntoli v. Garvin Guybutler Corp.*, 726 F. Supp. 494,

506–07 (S.D.N.Y. 1989) (holding individuals who act as agents or "in the interest of an

employer" cannot be sued under the EPA or NYLL), *with Moazzaz v. MetLife, Inc.*, No. 19-CV-

10531 (JPO), 2021 WL 827648, at *14 (S.D.N.Y. Mar. 4, 2021) ("Under the Equal Pay Act and its state analogue, an individual can bear liability as an 'employer' based on whether the individual 'possesses control over a company's actual operations in a manner that relates to a plaintiff's employment . . . .'").

Assuming *arguendo* that the Individual Defendants may be held personally liable under the EPA and NYLL, Plaintiff must plead the *prima facie* elements: (i) Acacia pays different wages to employees outside of Plaintiff's protected class(es); (ii) those employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) their jobs are performed under similar working conditions. *Boatright v. U.S. Bancorp*, No. 18 Civ. 7293 (LJL), 2020 WL 7388661, at *11 (S.D.N.Y. Dec. 16, 2020), *aff'd*, No. 20-4236-cv, 2022 WL 351059 (2d Cir. Feb. 7, 2022).

"[T]he key inquiry is whether the plaintiff has provided adequate comparators who are 'similarly situated in all material respects.'" *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 118 (S.D.N.Y. 2020); *see also Moazzaz*, 2021 WL 827648, at *4 ("To plead prohibited discrimination, plaintiffs typically identify a comparator, or a higher-paid colleague of the opposite gender. Plaintiffs and their comparators need not have 'identical' jobs, but a higher-paid comparator should not hold a job requiring 'greater skill, effort, and responsibility than [the] plaintiff's position.'"). In other words, a plausible claim "must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job content was 'substantially equal.'" *E.E.O.C. v. Port Auth. of N.Y. and N.J.*, 768 F.3d 247, 256 (2d Cir. 2014); *see also Weinreb v. Xerox Bus. Servs., LLC Health & Wellness Plan*, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018) ("The Second Circuit has made clear that the EPA pleading standard is 'demanding.'").

Plaintiff alleges that she was paid less than Palmer, a male, and less than Albors and Rosado, women who are "not Black." (¶¶ 173, 236, 245-46.) Plaintiff fails to allege, however, that she was otherwise similarly situated to Palmer, or Albors, or Rosado in all material respects, let alone in the context of their position(s) or job content. More specifically, Plaintiff makes no factual allegations as to their duties or responsibilities, nor does she mention that they performed work under similar working conditions. *See* Section II.B. "Given the complete absence of any factual allegations whatsoever relating to actual job content or working conditions," Plaintiff's EPA and NYLL claims should be dismissed. *Weinreb*, 323 F. Supp. 3d at 519; *see also Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 581 (2d Cir. 2020) ("[Plaintiff] has not alleged anything about her actual job duties or the actual job duties of her putative comparators. Accordingly, her allegations fall short of the pleading standards we impose on EPA claims.").

## V.    PLAINTIFF'S COMPLAINT FAILS TO STATE A RETALIATION CLAIM.

### A.    Individual Defendants Cannot Be Personally Liable Under Title VII.

It is well settled that the Individual Defendants cannot be held personally liable under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995); *see also Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Plaintiff's Title VII retaliation claim against the Individual Defendants should therefore be dismissed.

### B.    Plaintiff Fails to State a Retaliation Claim under § 1981, NYSHRL, or NYCHRL.

To state a retaliation claim under § 1981 or the NYSHRL, a plaintiff must allege facts that plausibly support a *prima facie* case: (1) she participated in a protected activity; (2) the defendant knew of the protected activity; (3) she faced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *See*

*Littlejohn*, 795 F.3d at 316; *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). Similarly, to state a retaliation claim under the NYCHRL, a plaintiff must plausibly allege that "(1) [she] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [her]; and (3) a causal connection exists between the protected activity and the adverse action." *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51–52 (N.Y. App. Div. 2012). Said another way, to prevail on a retaliation claim under the NYCHRL, "the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112.

Plaintiff alleges that, because of her complaint(s) to seven individuals regarding her alleged treatment at Acacia, she suffered five adverse actions: (i) "Glasel completely ignored Plaintiff for weeks;" (ii) a few weeks later, in response to her refusal to complete a filing, Glasel "became enraged, stood up over Plaintiff in a menacing and intimidating manner, pounded his fists on the table in front of her, and yelled down at her and ordered that she comply with his demand" (¶ 65); (iii) more than one year after later, "'new restrictions' against speaking engagements" were enforced against her by an unidentified person (¶ 77); (iv) also more than one year later, Jones "reprimanded [Plaintiff] for re-hiring outside counsel without prior approval" (¶ 76); and (v) her stepdaughter was not hired for a paralegal position because of a nepotism policy (¶ 186).

These five instances of alleged adverse action—which, as pleaded, largely reflect an attempt to hold Plaintiff to a reasonable standard of performance—are not reasonably likely to deter a person from engaging in protected activity under even the NYCHRL standard. *See, e.g., Lott v. Coreone Techs., LLC*, No. 14-CV-5848 (CM), 2016 WL 462486, at *15 (S.D.N.Y. Feb. 2,

2016) (holding that the "litany" of allegedly retaliatory actions alleged by plaintiff—including "having to report vacation days; . . . having his performance criticized; having his son's application for a position in the internship program denied; the Company's failure to pay him and others 401(k) catch-up payments; and having his emails ignored by other executives"—were not "reasonably likely to deter a person from engaging in protected activity" under the NYCHRL).

Even if Plaintiff has plausibly alleged that she suffered adverse action as a result of protected activity, which she has not, she has again failed to properly allege causal nexus to each action.  A plausible inference of a causal connection can be drawn either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010).  "[I]t is well settled that when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together."  *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014); *Baldwin v. Cablevision Sys. Corp.*, 888 N.Y.S.2d 1, 6 (1st Dep't 2009) (holding four months between protected act and adverse action was "not temporally proximate enough to satisfy the causality element of plaintiff's [NYCHRL] retaliation claim").

Plaintiff does not plausibly allege disparate treatment or retaliatory animus, so she must rely on temporal closeness.  Plaintiff's reprimand by Jones and the limitation on speaking engagements are both alleged to have occurred in May 2019, more than one year after she lodged her internal complaint(s).  Those alleged incidents are not close enough in time to give rise to

any plausible causal inference.  And to the extent Plaintiff alleges that enforcement of the

nepotism policy was retaliatory (¶ 186), the Complaint is silent as to when that incident occurred,

so there is no basis to infer a causal nexus to her alleged complaint(s).  That leaves the allegation

that Glasel allegedly ignored Plaintiff and then raised his voice when she refused to complete a

filing in her role as in-house litigation counsel.  That alleged conduct does not support a

plausible inference of retaliatory animus.  Even assuming the incident happened, it reflects

conduct by a supervisor that Plaintiff perceived as harsh—nothing more than a bad day at the

office.  Accordingly, Plaintiff's retaliation claims should be dismissed.

## VI.    PLAINTIFF'S NYCHRL "PAY DISPARITY" CLAIM IS DUPLICATIVE AND SHOULD BE DISMISSED.

Plaintiff's Twelfth COA alleging "discrimination based upon pay disparity" under the

NYCHRL should be dismissed as duplicative.  In addition to the fact that, unlike the EPA and

NYLL, there exists no standalone unequal pay claim under the NYCHRL, disparate pay forms

the basis of Plaintiff's Fifth COA alleging discrimination under the NYCHRL.  (¶ 173.)  Because

Plaintiff's Twelfth COA is duplicative of her Fifth COA, it should be dismissed.  *See, e.g.,*

*Karupaiyan v. CVS Health Corp.*, No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *27 (S.D.N.Y.

Sept. 23, 2021) (dismissing "wrongful termination" claim as duplicative of discrimination

claim); *Ardigo v. J. Christopher Cap., LLC*, No. 12 Civ. 3627 (JMF), 2013 WL 1195117, at *4

(S.D.N.Y. Mar. 25, 2013) (dismissing discrimination claim as duplicative of hostile work

environment and retaliation claims); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 592

(S.D.N.Y. 2011) (dismissing NYCHRL discrimination claim as duplicative of hostile work

environment claim).

**VII.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND FOR THE THIRD TIME.**

Having had the opportunity to remedy the defects in both her original complaint and First Amended Complaint, it is clear that Plaintiff cannot plausibly allege any facts that she was discriminated or retaliated against her because of her race, color, national origin, age, and/or gender.  Accordingly, this Court should not grant Plaintiff leave to amend her Complaint for a third time.  The Court should dismiss her Second Amended Complaint with prejudice.  *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) ("[W]here pleading deficiencies have been identified a number of times and not cured, there comes a point where enough is enough.").

**CONCLUSION**

For the reasons set forth above, the Court should grant the Individual Defendants' motion to dismiss the Second Amended Complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
          June 6, 2022

                                        GIBSON, DUNN & CRUTCHER LLP

                                        By: /s/ Richard W. Mark
                                             Richard W. Mark
                                             Hayley Fritchie

                                             200 Park Avenue
                                             New York, NY 10166-0193
                                             (212) 351-4000
                                             rmark@gibsondunn.com
                                             hfritchie@gibsondunn.com

                                             *Attorneys for Defendants Raul Russi,*
                                             *Lymaris Albors, and David Glasel*

23

## <u>CERTIFICATION OF COMPLIANCE</u>

This document complies with the formatting requirements of Rule II.D the Your Honor's Individual Practices because it was prepared in Times New Roman 12-point typeface and is double-spaced with one-inch margins.  This document also complies with the word limitation of Rule II.D because it contains 6976 words counted by Microsoft Word, excluding this Certificate of Compliance, the cover page, the table of contents, and the table of authorities.

Executed on June 6, 2022, New York, New York

/s/ Richard W. Mark
Richard W. Mark
