UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIRNA MARTINEZ SANTIAGO,

                Plaintiff,

      - against -

ACACIA NETWORK, INC., ET AL.,

                Defendants.

22-cv-228 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Mirna Martinez Santiago, brought this action against the defendants, ACACIA Network, Inc. ("Acacia"), Promesa Administrative Services Organization, Inc. ("Promesa"), David Glasel, Lymaris Albors, and Raul Russi, alleging discrimination on the basis of national origin, race, color, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"). The plaintiff also alleges discrimination with respect to compensation in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); the New York State Equal Pay Act, N.Y. Labor Law ("NYLL") § 194; and the NYCHRL. Finally, the plaintiff alleges age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.; the NYSHRL; and the NYCHRL, and

retaliation in violation of Title VII, Section 1981, the NYSHRL and the NYCHRL.

The defendants now move to dismiss the plaintiff's Second Amended Complaint (the "Complaint") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendant's motion to dismiss is **granted** in part and **denied** in part.

**I.**

The following facts are taken from the plaintiff's Complaint, ECF No. 31.[1] Santiago is a "51-year old Black female of Honduran descent with a dark complexion." Compl. ¶ 15. Acacia and Promesa (the "Corporate Defendants") are non-profit domestic corporations. Id. ¶¶ 8-9. Promesa provides supervisory and administrative services for Acacia. Id. ¶ 9. The individual defendants were all employees of Acacia, with Glasel serving as Chief Legal Officer, Russi serving as Chief Executive Officer, and Albors serving as Chief Operating Officer. Id. ¶¶ 10-13.

From October 2016 to September 20, 2019, Acacia employed the plaintiff as Deputy Counsel for Litigation in the Office of Legal Affairs. Id. ¶ 14. At the time the plaintiff was hired as Deputy Counsel, she had over 20 years of litigation experience,

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

held leadership positions at the New York State Bar Association, and frequently participated in speaking engagements and panel engagements. Id. ¶ 36. At Acacia, the plaintiff handled litigation matters, oversaw outside counsel on litigation matters, and "served as de facto Supervisor to other attorneys and staff in the Office of Legal Affairs." Id.

Albors began at Acacia as an Event Planner before being promoted to Chief of Staff and then to Chief Operating Officer (COO), all within an eighteen-month period. Id. ¶ 22. As COO, Albors, a Puerto Rican woman, "publicly stated on numerous instances that it was her purpose to promote Puerto Rican employees," and that the future of the organization was "young Puerto Rican women." Id. ¶ 25. The plaintiff alleges that, as COO, Albors salary was over $350,000. Id. ¶ 49. The plaintiff alleges that when the plaintiff was hired in October 2016, Albors was approximately in her mid-thirties. Id. ¶ 84. The plaintiff alleges that she was subordinated to Albors after Albors' promotions.

Giamaro Rosado is a Puerto Rican employee, about 35 years old, who had been an attorney for 4 years when she was promoted to Supervisor in the Office of Legal Affairs. Id. ¶¶ 21, 23, 38. As a result of this promotion, the plaintiff was directed to report to Rosado. The plaintiff alleges that she was "skipped over for advancement" in favor of Rosado because the plaintiff

3

was not Puerto Rican. Id. ¶ 30. The plaintiff alleges that, "due to Rosado's limited legal and litigation experience," Rosado often sought and consulted with the plaintiff "for advice, direction, review and supervisory assistance on legal and litigation matters." Id. 41. As Supervisor, Rosado was paid more than the plaintiff despite having 15 fewer years of experience.

In June 2019, the plaintiff was promoted to Senior Deputy Counsel for Litigation. Id. ¶ 47. However, Rosado "received a much larger salary increase than [the plaintiff]" and remained the plaintiff's supervisor "on paper" as the then-Chief Legal Officer explained to the plaintiff. Id. The plaintiff alleges that her salary remained "between $25,000 and $100,000 less than Rosado's salary." Id. ¶ 48. The plaintiff alleges that Albors and Russi directed the Office of Legal Affairs to "keep Rosado's salary and position higher" because Rosado was "young and Puerto Rican" and the plaintiff was not. Id. ¶ 52.

Russell Palmer is a white male who was employed by Acacia as Corporate Risk Manager in the Office of Legal Affairs. Id. ¶ 53. Palmer did not have a college degree when he was hired. In 2018, the plaintiff interviewed Palmer for the position of Corporate Risk Manager and recommended that Palmer be hired. Id. ¶ 54. The plaintiff also trained Palmer. Id. The plaintiff alleges that she "developed the risk management policies and handled the risk management responsibilities for Acacia herself

4

for nearly a year and a half prior to Palmer's hire." Id. When Palmer was hired, Hector Diaz, Acacia's then-president, "raised concerns about hiring Palmer without a college degree and paying him more than female women of color . . . in the Office of Legal Affairs." Id. ¶ 55. In response to this concern, Acacia raised Rosado's salary to be $10,000 more than Palmer's, but did not also raise the plaintiff's salary. Id. ¶¶ 55, 58. Palmer's starting salary was $13,000 more per year than the plaintiff's during the same time period. Id. ¶ 56. Additionally, Palmer was provided with free parking directly across the street from the office, whereas the plaintiff was not provided with free parking and had to pay for parking approximately four blocks away from the office. Id. ¶¶ 59, 60.

The plaintiff then complained repeatedly to Glasel, her direct supervisor; Katrina Jones, Director of Human Resources; Candida Hierro, Human Resources Manager; Maria del Carmen Arroyo, then-Vice President of Administration; Rodriguez, then-Special Counsel; Diaz; and Roberto Velez, the attorney for Acacia's Board of Directors, about the discrimination that she allegedly experienced. Id. ¶ 61. The plaintiff alleges that, instead of investigating the complaints, the defendants retaliated against her.

The plaintiff alleges that, from July 2017 to March 19, 2018, she complained to Glasel about her salary being

5

significantly less than the salaries of Rosado and Palmer and about her subordination to Rosado. Afterwards, Glasel "completely ignored" the plaintiff for weeks until April 2018, when Glasel "demand[ed]" that the plaintiff file a motion on a matter for which there was outside counsel and in which the plaintiff was not the attorney of record. Id. ¶ 65. The plaintiff responded that it would not be proper for her to do so. Immediately afterwards, "Glasel became enraged, stood up over [the plaintiff] in a menacing and intimidating manner, pounded his fists on the table in front of her, and yelled down at her and ordered that she comply with his demand." Id. ¶ 65. This caused the plaintiff to "cry, return to her office to get her belongings and leave the premises." Id. ¶ 67. Both Rodriguez and Diaz witnessed the event but "did not nothing to stop it." Id. ¶ 70.

The next day, the plaintiff complained to Rodriguez, Diaz, and Arroyo about Glasel's conduct. Rodriguez allegedly dismissed the complaints of Glasel's discrimination by stating that "Glasel's wife is dark." Id. ¶ 73. Following the plaintiff's complaints, Glasel was promoted to Special Counsel, Rodriguez's former position, and Rodriguez was promoted to Chief Legal Officer, Glasel's former position. Id. ¶ 74.

In May 2019, Jones, the Director of Human Resources, reprimanded the plaintiff for re-hiring outside counsel without

Russi's prior approval, despite the approval of Rodriguez, then-Chief Legal Officer. Additionally, the plaintiff alleges that "a targeted and retaliatory policy" was "hastily created" to prevent the plaintiff from "public speaking and participating on a prestigious panel at St. John's University School of Law" due to "new restrictions" against speaking engagements for which the plaintiff previously had been "provided blanket approval." Id. ¶ 77. The plaintiff alleges that Yaberci Perez-Cubillan, another employee who was a "light skinned Hispanic woman," was not restricted from public speaking engagements under the same policy. Id. ¶ 78.

The plaintiff also alleges that when her stepdaughter applied for an open paralegal position at Acacia, Rodriguez told the plaintiff that her stepdaughter could not be hired because of a policy against nepotism. However, the plaintiff alleges that it was "common for Puerto Rican employees to have other family members working at Acacia, such as Eugenio Russi reporting to his brother, Raul Russi, and David Arroyo reporting to his sister, Maria del Carmen Arroyo." Id. ¶ 80. The plaintiff alleges that the nepotism policy "did not impact Puerto Rican employees." Id. ¶ 81.

The plaintiff resigned from her position on September 20, 2019 and alleges that she was constructively discharged at that time due to the defendants' "racism, harassment, and

retaliation." Id. ¶ 99. Upon her resignation, the plaintiff met
with Arroyo, then-Senior Vice President of Administration, and
complained of discrimination. During that meeting, Arroyo
"reasserted and stated" Albors' earlier "vision" that the future
of Acacia was "young, Puerto Rican women," and that "Rosado met
that description and that [Santiago] did not." Id. ¶ 83.

The plaintiff alleges that there was a "hierarchy of
favoritism" at Acacia where "at the top of this hierarchy were
Puerto Rican employees, who were treated most favorably,
followed by white employees, then non-Puerto Rican employees
with lighter skin color, then non-Puerto Rican employees with
darker skin color, and Black employees at the bottom." Id. ¶ 18.
For this reason, the plaintiff alleges that the defendants
"exhibited discriminatory preference towards Puerto Rican
employees." Id. ¶ 20. The plaintiff also alleges that the
defendants "had a stated policy and practice" of discrimination
"based on age, national origin and gender," causing the
plaintiff's "opportunities for advancement at Acacia [to be]
limited because she was not a young Puerto Rican woman." Id.
¶ 26.

The plaintiff alleges that the defendants discriminated
against her based on her race, color, national origin, age, and
sex. The plaintiff also alleges that the defendants created a
hostile work environment, failed to pay her equally in

comparison to male comparators, and retaliated against her for her complaints. The plaintiff seeks damages for lost wages and emotional distress. The plaintiff also seeks liquidated damages, punitive damages, and attorney's fees.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in

the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III.

#### A.

The plaintiff claims that she suffered disparate treatment based on her race, color, national origin and sex in violation of Title VII, the NYSHRL, and the NYCHRL. Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To survive a motion to dismiss a disparate treatment claim under Title VII, the plaintiff must plausibly allege that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading

10

terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Id. An inference of discrimination may also be supported by showing that similarly situated employees not in the protected group were treated more favorably. See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). Employees are similarly situated if they are "subject to the same performance evaluation and discipline standards" and "engaged in comparable conduct." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000). The employees' circumstances need only be "reasonably close," id., and the "employees need not be of the exact same rank." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 109 n.7 (2d Cir. 2010). Additionally, "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus may give rise to an inference of discriminatory motive." Gregory v. Daly, 243 F.3d 687, 697 (2d Cir. 2001).

Because Title VII claims cannot be asserted against individual defendants, see Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004), the plaintiff's Title VII claims are alleged only against the Corporate Defendants. The plaintiff alleges that she experienced discrimination by the Corporate Defendants.

The parties do not dispute that the plaintiff is a member of a protected class under Title VII. The plaintiff has also alleged that she has over 20 years of litigation experience and is therefore qualified for her position. The parties also do not dispute that the plaintiff has suffered adverse action, with the plaintiff alleging that she was paid less than similarly situated employees outside the protected class and passed over for opportunities provided to other employees outside the protected class. The defendants argue only that the plaintiff has not plausibly alleged that the adverse actions occurred under circumstances giving rise to an inference of discrimination.

**B.**

The plaintiff argues that she was discriminated against on the basis of national origin because she was not Puerto Rican. The plaintiff alleges that COO Albors' "vision" for the future of Acacia was "young Puerto Rican women" and her often-stated purpose was to "promote Puerto Rican employees." Compl. ¶¶ 25, 83. These statements support an inference of discrimination because they are remarks by a decisionmaker reflecting discriminatory animus. See Gregory, 243 F.3d at 697. This inference is supported by the plaintiff's allegation that Albors chose to "keep Rosado's salary and position higher" than the plaintiff's because Rosado was "young and Puerto Rican" and the

plaintiff was not. Compl. ¶ 52. Furthermore, the plaintiff alleges that Arroyo, another high-ranking employee in Acacia, affirmed Albors' vision by restating that the future of Acacia was "young, Puerto Rican women" and that "Rosado met that description and [the plaintiff] did not." Id. ¶ 83. All these comments, taken together, support an inference that Acacia held a discriminatory preference for Puerto Rican employees.

The defendants argue that the Albors' comments were "stray remarks" that are not indicative of discrimination. See Naumovski v. Norris, 934 F.3d 200, 216 (2d Cir. 2019). But Albors' remarks cannot be discounted as simply "stray remarks," particularly on a motion to dismiss. Four factors are considered to determine whether a statement was simply a stray remark: (1) who made the remark; (2) when the remark was made; (3) the content of the remark; and (4) the context in which the remark was made. See Lenzi v. Systemax, Inc., 944 F.3d 97, 112 (2d Cir. 2019). The statements here came from one of the ultimate authorities in the organization and explicitly indicated an intent to privilege and promote Puerto Rican employees. The statements were also made publicly. Such statements cannot be dismissed as stray remarks unconnected to any decisions made by the company with respect to the plaintiff. This is particularly true where, as here, the statements were repeated by another high-ranking employee, Arroyo, in a similarly significant

13

context. Arroyo made the statements directly to the plaintiff in connection with the plaintiff's resignation.

The plaintiff also alleges that she was treated adversely with respect to pay and her ability to hire relatives as compared to Rosado, a Puerto Rican woman. To show disparate treatment on the basis of comparators, the plaintiff must show that the plaintiff was "similarly situated in all material respects to the individuals with whom [the plaintiff] seeks to compare herself." Littlejohn, 795 F.3d at 312. The plaintiff and Rosado were both attorneys. The plaintiff had considerably more experience than Rosado. And the plaintiff was engaged in similar activities compared to Rosado, shown by the plaintiff's allegations that Rosado repeatedly sought the plaintiff's advice on how Rosado should do her own job. Yet the plaintiff was paid less than Rosado, and this remained true after the plaintiff's promotion because Rosado was promoted to an even higher position. Accordingly, the plaintiff has plausibly alleged a claim of disparate treatment based on national origin.

C.

The plaintiff also argues that she suffered disparate treatment based on her race and color. The plaintiff alleges that she was discriminated against because she is Black, in view of the discrimination that favored non-Black employees such as Rosado. For all of the reasons explained above, the plaintiff

has alleged a plausible claim of discrimination based on race
when compared to non-Black employees such as Rosado. The
plaintiff also compares herself to Palmer, a white male, who had
neither a legal education nor a college degree when he was
hired. The plaintiff alleges that she interviewed Palmer and
recommended him to be hired. Yet Palmer was also paid more than
the plaintiff was paid. This is true even though Diaz, Acacia's
President, expressed concerns about paying Palmer, a white male
without a college degree, more than "female women of color."
Compl. ¶ 55.

The defendants argue that Palmer is not similarly situated
to the plaintiff because he was not a lawyer. However, if
anything, this only shows that Palmer had fewer qualifications
than the plaintiff had while still being paid more. It would
make no sense to conclude that Palmer was less of a comparator
for having fewer credentials when he was still being paid more
than the plaintiff. Moreover, the plaintiff has alleged that she
"developed the risk management policies and handled the risk
management responsibilities" that constituted Palmer's job
responsibilities in addition to training Palmer for that job.
Compl. ¶ 54. Thus, the plaintiff has alleged sufficient facts
indicating that she was similarly situated to Palmer.

Accordingly, the plaintiff has plausibly alleged that she was treated disparately as compared to Palmer, a white male.[2]

### D.

The plaintiff also argues that she suffered disparate treatment based on her sex in violation of Title VII, the NYSHRL, and the NYCHRL. However, the Complaint is devoid of any factual allegations to support a plausible claim that the plaintiff was discriminated against because of her sex. The plaintiff asserts in the Complaint that Albors stated the future of Acacia to be women, and that Acacia promoted many women into prominent positions, such as Albors (COO), Compl. ¶ 22, Rosado (Supervisor), id. ¶ 23, and Arroyo (VP Administration), id.

---

[2] The plaintiff also argues that she suffered disparate treatment based on race in violation of 42 U.S.C. § 1981. Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." Johnson v. Ry. Express Agency, 421 U.S. 454, 459-60 (1975). On a motion to dismiss, Section 1981 disparate treatment claims are analyzed under the same framework as Title VII claims. See Littlejohn, 795 F.3d at 312. Thus, the plaintiff's Section 1981 claims survive for the same reasons as the plaintiff's Title VII claims. The plaintiff's Section 1981 claims also survive against the individual defendants because, unlike Title VII, Section 1981 allows for individual liability. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000).

Similarly, the plaintiff's claims against all of the defendants for disparate treatment for violations of the NYSHRL and the NYCHRL on the basis of national origin, race and color survive under the NYSHRL and NYCHRL's more liberal pleading standards. See Europe v. Equinox Holdings, Inc., No. 20-cv-7787, 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sep. 29, 2022) (NYSHRL); Pollock v. Shea, 568 F. Supp. 3d 500, 511 (S.D.N.Y. 2021) ("The NYCHRL uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards.").

¶ 83. The plaintiff does not allege any additional facts plausibly showing that the defendants intended to discriminate on the basis of sex. Accordingly, the plaintiff's sex discrimination claims fail.

## IV.

The plaintiff also argues that she was paid less than comparable male employees in violation of the EPA, the NYLL, and the NYCHRL. The defendants argue that the plaintiff's EPA claims are time-barred because the plaintiff left her employment in May 2019 but only brought the current action in May 2022, more than two years later. The EPA generally has a two-year statute of limitations unless there is a willful violation, in which event the statute of limitations is three years. 29 U.S.C. § 255(a). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Pollis v. New Sch. for Soc. Rsch., 132 F.3d 115, 119 (2d Cir. 1997). The plaintiff alleges that she complained on several occasions to multiple decisionmakers at Acacia of the disparate pay she received and of her belief that "the disparity . . . was because of [the plaintiff's] membership in protected classes." Compl. ¶ 62. However, her situation did not change, and the defendants continued to pay her less. This is sufficient to allege a willful violation of the EPA, see Pollis, 132 F.3d at 120 ("This evidence - that the New School

knew that Pollis was paid less than comparable males, but did not rectify the situation – is sufficient to support the jury's finding of reckless or willful violation of the Equal Pay Act."), and therefore the plaintiff's claim is not barred by the statute of limitations.

To show discrimination under the EPA, the plaintiff must show that: (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. Lavin-McEleney v. Marist Coll., 239 F.3d 476, 480 (2d Cir. 2001). Unlike a Title VII claim, "proof of the employer's discriminatory intent is not necessary for the plaintiff to prevail on [an EPA] claim." Belfi v. Prendergast, 191 F.3d 129, 136 (2d Cir. 1999). The plaintiff points to Palmer as a male comparator and both are similarly situated for the reasons explained above. The plaintiff has alleged adequately that Palmer was paid more, that Palmer performed a job requiring at least equal – if not less – skill, effort, and responsibility, and that Palmer worked under similar conditions as the plaintiff. Accordingly, the plaintiff has plausibly alleged a claim of pay discrimination under the EPA.[3]

_____

[3] Equal pay claims under New York Labor Law § 194 are governed by the same framework as claims under the EPA. See

The individual defendants argue that the NYCHRL does not allow for a standalone claim of pay discrimination. However, a separate provision of the NYCHRL allows for disparate pay claims. See N.Y.C. Admin. Code § 8-107(1)(a)(3). The NYCHRL makes "actionable any form of sex-based compensation discrimination." Torre v. Charter Commc'ns, Inc., 493 F. Supp. 3d 276, 284 (S.D.N.Y. 2020). Disparate pay claims under the NYCHRL are judged under the Title VII framework, with the slight difference that "the adverse action need not be material; instead, a plaintiff need only demonstrate differential treatment that is more than trivial, insubstantial, or petty." Id. at 285. Under the Title VII framework,[4] the plaintiff has already satisfied the first two prongs of her prima facie case for the same reasons as above. The plaintiff has also plausibly alleged that she suffered an adverse employment action by plausibly alleging a claim under the EPA. See id. ("Satisfaction of the Equal Pay Act's unequal-pay-for-work standard is sufficient (although not necessary) to establish an adverse

---

Talwar v. Staten Island Univ. Hosp., 610 F. App'x 28, 30 n.2 (2d Cir. 2015). Thus, for the same reasons, the plaintiff's NYLL claims also survive.

[4] A Title VII plaintiff's prima facie case requires a showing that "(1) she was a member of a protected class; (2) she was competent to perform the job in question, or was performing the job duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination." Torre, 493 F. Supp. 3d at 285.

employment action."). Finally, the plaintiff has satisfied the
fourth prong of her prima facie case by alleging that Palmer was
"paid more than she was, despite having similar responsibilities
and equal or lesser credentials." Id. at 286. Accordingly, the
motion to dismiss the plaintiff's equal pay claims is **denied.**

**V.**

The plaintiff also argues that the defendants fostered a
hostile work environment in violation of the NYCHRL. A hostile
work environment claim under the NYCHRL requires the plaintiff
to show that the plaintiff "was treated less well than other
employees on the basis of a protected characteristic." Syeed v.
Bloomberg, L.P., 568 F. Supp. 3d 314, 341 (S.D.N.Y. 2021). To do
so, the plaintiff must "plead facts tending to show that actions
that created the hostile work environment were taken against
[her] because of a prohibited factor." Id. The plaintiff has
alleged that she was paid less than a white male comparator and
Puerto Rican comparators, that she was provided fewer
opportunities for promotion than Puerto Rican comparators, that
an alleged nepotism policy was enforced against her but not
against others, and even that she was not given a free parking
spot while a white comparator received one. These allegations
sufficiently show that the plaintiff was treated less well due
to her national origin, race, and color "[u]nder the NYCHRL's

20

broad pleading standards." Id. Thus, the motion to dismiss the

plaintiff's hostile work environment is **denied**.

VI.

The plaintiff also argues that she was retaliated against

in violation of Title VII, 42 U.S.C. § 1981, the NYSHRL, and the

NYCHRL.[5] Retaliation claims under these statues are all governed

by the Title VII framework. See Hicks v. Baines, 593 F.3d 159,

164 (2d Cir. 2010) (Title VII, Section 1981, NYSHRL); Craven v.

City of New York, No. 19-cv-1486, 2020 WL 2765694, at *6

(S.D.N.Y. May 28, 2020) (NYCHRL). Under this framework, the

plaintiff must plausibly allege: (1) participation in a

protected activity; (2) that the defendant knew of the protected

activity; (3) a materially adverse employment action; and (4) a

causal connection between the protected activity and the adverse

employment action. Craven, 2020 WL 2765694, at *6. Actions are

"materially adverse" if they are "harmful to the point that they

could well dissuade a reasonable worker from making or

supporting a charge of discrimination." Hicks, 593 F.3d at 165.

Retaliation claims under Title VII and Section 1981 require a

showing of but-for causation. See Craven, 2020 WL 2765694, at

---

[5] The Title VII retaliation claim cannot be asserted against
the individual defendants, because Title VII does not allow for
individual liability. See Patterson, 375 F.3d at 221.

*6.[6] The plaintiff has alleged that she participated in a protected activity by complaining of her unequal pay and disparate treatment, and that the defendant knew of her complaints. Unequal pay can constitute an adverse employment action. See Syeed, 568 F. Supp. 3d at 344. However, the plaintiff has not alleged a causal connection between the protected conduct and her unequal pay because the unequal pay began before her complaints and, in fact, was the subject of her complaints. See Bacchus v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 214, 247 (E.D.N.Y. 2015) ("An employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct."). On the other hand, the plaintiff has alleged a series of other incidents occurring after her complaints, such as reprimands, restrictions on her outside activities, and unequal treatment, that cannot be dismissed as non-retaliatory on this motion to dismiss.

_____

[6] The "higher but-for causation standard does not apply to NYCHRL retaliation claims." Cardwell v. Davis Polk & Wardwell LLP, No. 19-cv-10256, 2020 WL 6274826, at *37 (S.D.N.Y. 2020). However, because the plaintiff has sufficiently pleaded but-for causation, her NYCHRL claims also survive. Similarly, although it is an open question whether but-for causation applies to NYSHRL retaliation claims, the plaintiff's NYSHRL claims survive for the same reason. See, e.g., Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834, 847 n.7 (2d Cir. 2013).

Accordingly, the motion to dismiss the plaintiff's retaliation claims is **denied**.

### VII.

### A.

The plaintiff also brings a claim of age discrimination under the ADEA. The ADEA protects employees over 40 years of age from age discrimination in employment. 29 U.S.C. § 631(a). An ADEA claim requires a showing that the plaintiff: (1) was within the protected age group; (2) was qualified; (3) was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Dietrich v. City of New York, No. 18-cv-7544, 2019 WL 2236585, at *5 (S.D.N.Y. May 16, 2019).[7] The plaintiff must also show that age was the "but-for" cause of the challenged adverse employment action, not merely one of the motivating factors. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). To show this, the plaintiff must plead facts suggesting "that age was the reason that the employer decided to act." Id. at 176.

The plaintiff has satisfied the first two prongs by plausibly alleging that she was 48 years of age at the time of the alleged discrimination and that she had more than 20 years

---

[7] The ADEA claim is asserted only against the Corporate Defendants because it cannot be asserted against the individual defendants. Dietrich, 2019 WL 2236585, at *5.

of litigation experience. Compl. ¶¶ 36, 150. The plaintiff
identifies Rosado, a 35-year-old, as a comparator and alleges
that Rosado was paid more and promoted above the plaintiff
despite being less qualified, both of which constitute adverse
employment actions. See Butler v. N.Y. Health & Racquet Club,
768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011) (unequal pay)[8]; Jones v.
Target Corp., No. 15-cv-4672, 2016 WL 50779, at *4 (E.D.N.Y.
Jan. 4, 2016) (promotion). Furthermore, Albors stated the future
of Acacia to be "young Puerto Rican women," and Arroyo
reasserted this in addition to stating that "Rosado met that
description and [the plaintiff] did not." Compl. ¶¶ 25, 83.
Although these statements do not show that the plaintiff was
discriminated against solely because of her age, as opposed to
her not being of Puerto Rican origin, they lend support to the
plaintiff's contention that age was the reason that her employer
decided to act. See Fagan v. U.S. Carpet Installation, Inc., 770
F. Supp. 2d 490, 497 (E.D.N.Y. 2011) ("Where, as here, the
circumstances surrounding the adverse employment action could
give rise to inference of discrimination on multiple grounds,
the ultimate requirement that age be the 'but for' cause to
recover on an age discrimination claim does not foreclose a

---

[8] Although Butler identified unequal pay as an adverse
action under Title VII, ADEA and Title VII claims are analyzed
under similar frameworks. See Gorzynski v. JetBlue Airways
Corp., 596 F.3d 93, 106-07 (2d Cir. 2010).

plaintiff from pleading in the alternative."); see also Zann

Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 n.5 (2d Cir. 2013)

(finding that "but-for" causation does not require proof that

retaliation was the only cause of the employer's action, but

only that the adverse action would not have occurred in the

absence of the retaliatory motive). Accordingly, the motion to

dismiss the plaintiff's ADEA claim is **denied**.

**B.**

The plaintiff also brings state law claims for age

discrimination under the NYSHRL and NYCHRL. Age discrimination

claims under the NYSHRL and the NYCHRL are evaluated under the

"same analytic framework" as claims brought under the ADEA.

Weiss v. JPMorgan Chase & Co., No. 06-cv-4402, 2010 WL 114248,

at *2 (S.D.N.Y. Jan. 13, 2010).[9] Accordingly, the plaintiff's age

discrimination claims under the NYSHRL and NYCHRL survive for

the same reasons that her ADEA claim survives.

**CONCLUSION**

The Court has considered all the arguments of the parties.

To the extent not specifically addressed above, the arguments

---

[9] The NYCHRL, unlike the ADEA, does not require but-for
causation for age discrimination claims. Weiss, 2010 WL 114248,
at *1. Instead, a plaintiff needs to show only that age was a
"motivating factor" for an adverse employment action. Id.
Because the "motivating factor" standard is a lesser standard
than but-for causation, the plaintiff has plausibly alleged that
age was a motivating factor for the adverse action.

are either moot or without merit.[10] For the foregoing reasons, the defendants' motions to dismiss are **denied** except as to the plaintiff's disparate treatment claim based on sex which is dismissed. The Clerk is directed to close all pending motions.

SO ORDERED.

Dated:     New York, New York
           October 10, 2022

                                    John G. Koeltl
                          United States District Judge

---

[10] While the defendants requested oral argument on this motion to dismiss, the papers were sufficiently clear that oral argument was unnecessary.